You can proceed whenever you wish, counsel. Do you want to try to reserve some rebuttal time? I think possibly just a few moments. Okay, fine. Up to you. I'd like to start out with the fact that the cases make it clear that when there is a dispute as to the state of defendant's knowledge, the prior fact must resolve the dispute before the court can determine the legal question of whether such facts constitute a crime. You're talking about the previous case? Huh? You're talking about the previous case? Are you arguing the previous case? I might be. I'm sorry. I stepped out to the rest of them. Please proceed in that if you think that will help yours by all means. I'm sorry. What's your name first, by the way? Harold Collins on behalf of Magnetar. Okay. The reason that it's important is because an attorney and the court cannot create a reasonable inference of probable cause that is contrary to the material facts actually known by the defendant. Here it is in dispute whether or not the defendant knew that an offer had been made to sell a magnetic braking system for use on the elevator prior to the critical date, and also whether or not Intiman knew whether or not anyone in Kentucky Kingdom had been told that the magnetic brakes were being placed on the elevator for experimental purposes and might be replaced with mechanical brakes. And finally, whether as a matter of law, if Intiman had the right to claim the, I actually can't say the word, experimental exception to the on-sale bar of 35 U.S.C. Section 102B. And if the fact . . . Counsel, forgive me. You've heard this panel ask a number of questions about what deference we owe the district court in the determinations made in the cases you've heard thus far. As I see it in this case, you have, at least in your side of the case, two challenges. One is evidence of causation for antitrust purposes. And secondly, whether a reasonable attorney could have believed there was probable cause to proceed with the patent case. The district court didn't seem to find there was such. Can you help us with . . . let's take the causation issue first. You've got two experts. You've got some information that was put in on potential customers. But the experts, at least as I look at it, did not really answer the question of whether there was antitrust causation. We talked about performance and so on, but it was just an uncritical comment of this is what we projected, that we didn't get this. But didn't talk about the national economy. Didn't talk about the competition in the business. Didn't talk about decline in sales in the breaking of roller coaster equipment. So deal with that first, please, if you will. Okay. What can you help us with in terms of whether you've met the causation issue? Well, first, I think in that point we need to look at Hangard v. Ethicon. At who? Hangard v. Ethicon. It's a Ninth Circuit case which is quoted in the brief. That case found that where you have prosecuted a patent case in bad faith, knowing that it was brought with fraud upon the patent office. But you haven't proved that. That's your contention. But what's your – this is an unusual case in that if the patent were valid, none of what you're talking about would make any sense. You're saying, okay, ultimately it turned out not to be valid. In order to show that the antitrust laws have been violated, which, of course, normally would have no application where there's a valid patent, you have to show, among other things, there's causation. So I'm asking you about that portion of it. Okay. So I want you to assume away the problem. I want you to tell me what evidence there is in the record that shows that there was antitrust causation. Antitrust causation is – okay. Causation in the sense that what happened here is what they were trying to do was maintain their monopoly over the magnetic brake business as those brakes were sold to the major amusement parks in the United States. They had, prior to 2000, a monopoly on that, a natural monopoly. Okay, but you're not answering my question, counsel. What I'm asking you is you had these experts and you had the letters. What in their testimony met the antitrust causation prong, if you will? Wasn't their testimony inadequate to meet that? No. Why not? Because Mr. Hanlon testified that it was that the magnetic braking system used on the elevator, the Kentucky elevator, had been reduced to practice prior to the critical day of April 12, 1992. Other evidence we presented, which I can go forward, also sustains that. But that's on the probable cause issue. I'm talking about the causation issue. You have to show that the alleged violation is what caused the loss. And in this case, your experts talked about what was projected as the company's anticipated results, what actually happened, and blamed that on the antitrust violation. Didn't talk about what happened in the national economy. Didn't talk about the competition within the business. And, in fact, the lowered demand within the role of the company. Well, let's start this way. Mr. Probonik, in his declaration, explained that, with few exceptions, there is no requirement that an amusement ride that's been certified with mechanical brakes be upgraded with magnetic brakes. Price expert, Mr. Mark Hallin, states that, to what should be obvious, that manufacturers and purchasers of amusement rides do not want parts inserted in their rides that would subject them to patent infringement claims. Consequently, since there is no legal requirement to purchase magnetic brakes, Mr. Probonik testified that when Intamin filed the patent infringement case against Magnetar in 2004, it had a catastrophic effect on his business. And Mr. Probonik is allowed to testify to that. Maybe I can try. My colleague is giving you a pretty good question, but I guess I'm where he is. It seemed to me that your expert projected this loss by subtracting the projected revenue in the business plan from the actual revenue, subtracting those two figures. I didn't see anything in that that there was an analysis of the business plan saying the projections were good. I didn't see any evidence in that testimony that he looked at other causes that might have caused this difference between projected revenue and actual revenue. I didn't see anything in there about what was the economy doing generally, what was the business doing generally, and I didn't see anything in there that said, and these people caused it. All I saw was projected revenue, actual revenue. And that's what he's saying. What evidence do we have that these people caused anything? Well, okay, let's look at 2004. Let's just take 2004. In 2004, up until that point, the business and Mr. Schultz's study shows it was going up and going up very well. Then all of a sudden in 2004, wham, went straight down. Now, Intiman listed the four items that you picked off that he says Mr. Schultz should have looked at. One, he says he should have looked at the 2007 Delaware case. That hadn't been filed in 2004. He said he should have looked at the fact that Mr. Schultz, excuse me, that Mr. Avani was an expert witness. Well, Mr. Schultz did testify that he had taken that into effect. Then they said, well, they should have talked about his reputation in the business. Well, the court admitted that, in the opinion that Magnitari brought forward, that it had a good reputation in the business. And then five, I mean four, the last thing they referenced that Mr. Schultz should have looked at was a recession in the economy. 2004, there was no recession. It was moving along at full steam, as we all know. And so none of those things. Well, but as we all know, it's not enough. I've got to look at what you've got as an expert. I've got to look at this expert. He's the only one who testified as to what the loss was. He's the only one that testified how we could calculate the loss. And I, frankly, was like the district court. I said, why is this projected revenue good? Why do I have to deal with that? And where is there any testimony saying that's what I ought to do? I said, why is it that they decline? What is the general economy for this type of business? Nobody said anything about that. What is the general economy in the United States, especially for this kind of a business? These are not businesses which go all the time. These are businesses which are cyclical. And nobody addressed that. And then I tried to find out, well, so what says that they, the opposition, caused it? He doesn't even say that. All he says is this is the loss. Put it down. But Mr. Berbonic testified what caused it. He did not say they caused it because he didn't know. No, he clearly said that his business was affected drastically when the patent lawsuit was filed in 2004. Did you agree, counsel, that if we conclude that these two experts and the letters do not prove causation by your opponent, that then you lose on that particular claim, on the antitrust claim, the Section 2 of the Sherman Act claim? With the exception, Your Honor, of go back to hand guards at the colony. I mean, if I have proven that it was an improperly filed patent case, then hand guard says that is antitrust injury. And hand guard says the money you paid to defend that case is antitrust injury. But forgive me, counsel. I'm reading different cases than you are. My understanding is that in order to show antitrust injury here, you have to show causation. And the causation has to be blamed on the people that you're suing in this case. And to show that they were the ones that caused the damage. And like Judge Randy Smith, I'm frankly, I don't see it. I'm trying to ask you to help me see where that is. Now, the case clearly rests on the fact that Intiman knowingly filed a patent infringement case against Magnitar that it knew had been obtained from the PTO by fraud. That's what? That's your question. Okay. And I think there's the fact, I've got facts that can show that. So you claim that if there was an invalid patent and you claim you can show that they knew there was a valid patent. That's all you need to show in terms of antitrust causation? Correct. Is that your position? If. If I've been injured by it. And hand guards time for the session, if that type of case has been filed, and you have had to pay $1.2 million to defend that case, and there's still at least $400,000 of costs that you're entitled to that haven't been paid, that's damages caused by the antitrust injury. And that's all you have to show? Well, I think that's a lot, Your Honor. No, I'm just asking you, you're saying you rest your case as far as the Section 2 Sherman Act claim on that contention. Is that correct? It rests on the contention that a fraudulent patent was filed that affected the marketplace and affected my client because my client, they had to destroy my client in order to have it work. Let's turn then to your malicious prosecution claim because you're about out of time. Okay. Why was the district court wrong in that particular instance? Because it seems to me what the district court said is the malicious injury claim or prosecution claim is not about what a reasonable attorney would think. It's what a reasonable attorney could never think. Yes. And to be fair, that would say looking at this situation, there is no way a reasonable attorney could ever think that. And he says you can't get there because there are facts in the record that suggests one might come out a different way. It isn't the way I came out. It isn't the way I thought about it. But it isn't to suggest they couldn't come out that way. That's where the judge was wrong. Okay, why? You can't make that inference if the defendant knew better. If the defendant knew that it… It isn't about this defendant. The record is not about what this defendant thought. That's what I worry about your argument. It's what his attorney thought. No, no, no. This is about what would a reasonable attorney, not this defendant. It might be unreasonable. No, no. Anybody. No. No, that's not so. You can't make a conclusion of what is reasonable that's contrary to what that defendant in that case actually knew. What's your case for that? Yes, it's from the circuit. Hydronautics. Hydronautics, that's your best case? And Flores versus… And Flores. Flores. So if I don't agree with you on those, say a different view, then you lose. It could well be, yes, Your Honor. All right, because I looked at Link Treasure versus Baby Trend. I looked at that. I looked at Leonardi versus Shell. I looked at Plumlee versus Mockett. I looked all over to try to find these particular things because I'm dealing with California law now. I'm looking about malicious prosecution. I'm not looking at Ninth Circuit law. I'm looking at California law. And I'm saying what do they say? Well, they say the same thing that a California court in one of their cases cited in my briefs. I don't have it right in front of me. The California does say that a defendant cannot hide behind an attorney if he knows what the facts actually are. And Shellen and Appell, the case to which they are relying, which basically the judge is relying upon, clearly says if the facts are in dispute as to what the defendant knows, you can't make a reasonable inference until you determine what the defendant actually knew. Thank you. Thank you, counsel. We'll hear now from the opposition. May it please the Court and good morning. Jerry Hawkshurst on behalf of Appellee and Cross-Appellant Intamin Limited. In order to get to a jury on their malicious prosecution claim and their Section 2 monopolization claims, Magnitar had to prove that the underlying action, the 350 action, was objectively baseless. And that's separate and apart from malice or subjective baselessness. The question of objective baselessness is a question for the court to decide. And that's under Sheldon Appell and that's under PRE, Professional Real Estate Investors. Sheldon Appell is perfectly clear that where there is a dispute about the facts, in other words, which I believe Magnitar is arguing here, that some of their evidence shows that the 350 patent may not have been properly issued and we have evidence that we argue shows that it was properly issued. That it's a question for the court to decide. And Judge Fease, who actually heard the 350 case, determined that Magnitar did not prove that all attorneys would agree that the case was meritless, which is what the standard is. Stated differently, if an attorney would believe that the action was tenable, that the patent was issued properly, then they lose. And Sheldon Appell is clear that you do not get to subjectively baselessness if the court determines on the record that the case was objectively proper, tenable. It's not any attorney, is it? It's a reasonable attorney. A reasonable attorney, yes, Your Honor. Yes, I stand corrected, yes, Your Honor. A reasonable attorney. And the record here, again, is that on the knowledge issue, the record here is that we have evidence that the lawyers who prosecuted the 350 action and the lawyer who did the 350 patent and the lawyer who prosecuted the 350 case had all the information about the elevator ride. Magnitar argues that they have evidence that shows the contrary. Again, that's not the kind of factual dispute that prevents a finding as a matter of law of whether the case was tenable. Turning to the hand guard's point that Magnitar is arguing, filing a malicious prosecution case or a case that's sham litigation does not give rise to a Section 2 claim. All misconduct does not automatically give rise to a Section 2 claim. To turn a malicious prosecution case into a Section 2 claim, you have to meet all the other criteria for establishing a Section 2 claim. In other words, you have to show market power. You have to define the relevant market. You have to show barriers to entry. And it's those elements that turn an ordinary claim, misconduct, anti-competitive conduct, from actionable under some other law into actionable under the Clayton Act. And that is in which case? Well, that would be Brunswick v. Volomat. All right. You've got the case I looked at. Yes, Your Honor. So the issue about hand guards, there was no dispute there about whether there was a market, an antitrust market. The Court just held, given the circumstances, that the cost of the litigation satisfied injury, given what the case was about. In this particular matter, when we're looking at the Sherman antitrust claim, the District Court, of course, focused on the causal antitrust injury, right? Yes, Your Honor. Did the District Court take up any of the other three prongs? No, Your Honor, and this Court can affirm the District Court on any argument that was made before it on the antitrust argument. And we did talk about the other prongs. Is it because the District Court felt like the other three prongs, there was sufficient evidence? No, Your Honor. The Court did not touch those elements at all. If I had to guess, I would say that it found Mr. Schultz's opinions, Mr. Hanlon's opinions, so unreliable that that was the end of the story. Well, that's the reason for the questions. It seemed to me that I focused on what the District Court does. I've got to look at causal antitrust injury. But if, in fact, I found causal antitrust injury, I didn't know if there was really enough evidence in the underlying hearing, if you will, to find any of the others lacking. And, Your Honor, I believe that that was, I do not believe that they created a triable issue of fact on the antitrust elements. The other answer we talked about. My worry was that the District Court really didn't focus on any of them, and, therefore, for me to say that any of them were, if you will, not met, would require some more fact-finding. I would say no, Your Honor, and here's why. This Court reviews the summary judgment de novo, of course. On appeal, we argued as an alternative basis for upholding the District Court's order that Magnitard did not satisfy these other elements. On appeal, Magnitard did not argue those other elements. They've waived them. There's nothing for this Court to consider in terms of those other arguments, as far as Magnitard goes. For our purposes, though, if we agree that there's no antitrust injury, we really don't need to go any further. The District Court didn't need to go any further, right? That's correct, Your Honor. I agree with that. Unless the Court has other questions, I'll submit. Any questions? No, thank you. Thank you. Thank you very much. You didn't reserve any rebuttal time. I think we have the arguments on both sides, so we thank you. The case just argued is submitted, and the Court stands in recess for the day.
judges: Lamberth, Smith, Smith